**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT MILLER,<br>Plaintiff, | : | NO. 4:25-CV-00120 |
| v. | : | (CAMONI, M.J.) |
| FRANK BISIGNANO,[1]<br>*Commissioner of Social Security*,<br>Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Robert Miller brought this action under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act. *See* Transcript, doc. 9-18 at 17. He challenges the Administrative Law Judge's (ALJ) evaluation of the consultative examiner's opinion and Miller's mental impairments. Pl.'s Br., doc 16 at 1. Because the ALJ's determinations are supported by substantial evidence, the Court will affirm the decision of the Commissioner.

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action is needed to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I. BACKGROUND

## A. Procedural History

On July 8, 2019, Miller applied for disability insurance benefits under Title II of the Social Security Act, alleging disability as of January 27, 2016, later amended to January 12, 2019. Doc. 9-2 at 14. Following an initial denial, Miller submitted an appeal, requesting a hearing before an Administrative Law Judge. Doc. 9-4 at 20. The ALJ conducted the hearing and determined that Miller was not disabled. Doc. 9-2 at 11. Miller appealed and this Court vacated the ALJ's decision and remanded the case. Doc. 9-19 at 37 (No. 22-CV-01476, docs. 14, 15). Upon remand, the ALJ held a new hearing and again determined that Miller was not disabled. Doc. 9-18 at 2, 5.

Miller has exhausted his administrative remedies, and so the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g). Pending before this Court is Miller's action seeking judicial review of the Commissioner's decision. Complaint, doc. 1. This case is fully briefed (docs. 16, 17, 20) and ripe for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and

Federal Rule of Civil Procedure 73, including entry of final judgment. Doc. 7.

### B. The Disability Determination Process

To determine whether a claimant is disabled under the Social Security Act, an ALJ applies a "five-step sequential evaluation process." 20 C.F.R. § 404.1520(a)(4). The ALJ assesses whether the claimant:

1. has engaged in substantial gainful activity since the onset of the alleged disability;
2. had a severe medically determinable impairment;
3. suffered from an impairment listed in the regulations as presumptively disabling;
4. could return to his past work; and
5. could perform other available work in the national economy.

*See* § 404.1520(a)(4)(i)–(v).

Between steps three and four, the ALJ also determines whether the claimant's RFC allows the claimant to continue his previous employment. § 404.1520(a)(4)(iv). RFC "is the most [a claimant] can still do despite" impairments. § 404.1545(a)(1). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful

employment other than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992), citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

**C. Issues on Appeal**

After following the five-step sequential analysis, the ALJ determined that Miller "was not under a disability . . . from January 12, 2019, the amended alleged onset date, through the date last insured." Doc. 9-18 at 6. The ALJ determined at the RFC stage that Miller has the ability:

> to perform light work as defined in 20 CFR 404.1567(b) except 4 hours stand/walk, occasional postural movements except never climb ladders, ropes or scaffolds, frequent feeling with the left upper extremity, avoid concentrated exposure to temperature extremes, humidity, vibration, fumes, odors, dust, gases, poor ventilation, dangerous machinery, and unprotected heights.

*Id.* at 10. The ALJ denied Miller's disability claim at step five, after considering Miller's "age, education, work experience, and residual functional capacity," because he found that "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id.* at 16.

Miller raises two issues on appeal, arguing that the ALJ erred by: (1) failing to properly evaluate the opinion of the consultative examiner; and (2) failing to properly evaluate Miller's mental impairments. Doc. 16 at 1.

## II. LEGAL STANDARD

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence

but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Miller is disabled, but whether the Commissioner's finding that Miller is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III. ANALYSIS

Miller argues that the ALJ erred by failing to properly evaluate the consultative examiner's opinion and his own mental impairments. Doc. 16 at 1, 8, 21. After careful review, the Court finds that the ALJ's decision was supported by substantial evidence and will affirm.

### A. The Consultative Examiner's Opinion

First, Miller asserts that the ALJ "cherry-picked" the record in evaluating the report of Dr. Ahmed Kneifati, a consultative examiner, and ignored objective findings in concluding that the examiner's report was inconsistent with the record, including his own findings.[2] Doc. 16 at 11. The Commissioner answers that the ALJ explicitly considered the medical findings that Miller argues he "fails to even mention," and that

---

[2] Miller also argues that an ALJ must provide "a good reason" for taking the "unusual step" of rejecting the agency's own consultative examiner's opinion, citing to *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). Doc. 16 at 12. *Beardsley* is not binding on this Court, and its holding relied on pre-2017 regulations that have since been superseded. *See Joshua H. v. O'Malley*, No. 23CV958, 2024 U.S. Dist. LEXIS 169736, at *19 (E.D. Mo. Sep. 20, 2024). To the extent Miller argues that the bar is somehow higher than the "substantial evidence" standard when evaluating a consultative examiner's opinion, he is mistaken.

Miller impermissibly asks this Court to reweigh the evidence. Doc. 17 at 10-11.

Here, the ALJ discussed Dr. Kneifati's examination findings at length:

> The claimant's weight was noted at 207 pounds. He presented with a mildly antalgic gait, using no assistive devices, and was able to walk on heels and toes without difficulty. He was unable to squat. He needed no help changing for the exam or getting on and off the exam table and was able to rise from a chair without difficulty. Dr. Kneifati found that the claimant presented with his lungs clear to auscultation, negative straight leg raising bilaterally, both seated and supine, no evident joint deformity, joints stable, and tenderness at the medial knees, L4-5 area, and volar wrist areas. He found that the claimant presented with decreased sensation to light touch at the low ulnar and medial nerve distribution in the left hand but with normal sensation otherwise throughout, mild to moderate edema blow the knees to the ankles, and decreased range of motion at the shoulders, knees, and lumbar region but with no muscle atrophy, normal reflexes, 5/5 strength in the upper and lower extremities, intact hand and finger dexterity, and 5/5 grip strength bilaterally. The claimant's pulmonary function testing resulted in only one acceptable trial with poor effort due to coughing. He had an FEV1 of 1.60, 44% of predicted, and an FVC of 2.38, 51% of predicted. Though the claimant had a significant pre- to post-bronchodilator use with FEV1 improved to 1.90, 53% of predicted, and FVC of 2.59, 56% of predicted, the claimant was again noted to be coughing after 2 puffs of Ventolin administered.

Doc. 9-18 at 12. Specifically, Miller argues that the ALJ "failed to even mention" certain findings from the record, including that Dr. Kneifati

"observed tenderness in lumbar spine (L4-5 level), and wrists." Doc. 16 at 12. But the ALJ clearly did consider those observations. Doc. 9-18 at 12 ("tenderness at the medial knees, L4-5 area, and volar wrist areas").

The ALJ concluded that Dr. Kneifati's opinion was unpersuasive because it conflicted with the objective evidence of record, including Miller's presentation on the day Dr. Kneifati examined him. Doc. 9-18 at 13. In reaching this conclusion, the ALJ considered Dr. Kneifati's own examination findings as well as other record evidence including other providers' physical examination findings. *Id.* Notably, the ALJ pointed out that, in contrast to the limitations he opined, Dr. Kneifati found that Miller "presented with no abnormal findings that would limit the use of his right hand with full strength in the extremity, 5/5 grip strength, and intact hand and finger dexterity. He also noted that the claimant presented with only a mildly antalgic gait without the use of an assistive device and had 5/5 strength in the lower extremities, clear lungs, and normal sensation in the lower extremities as well." *Id.* Thus, read as a whole, the ALJ's decision was supported by substantial evidence—far more than a "mere scintilla." *Richardson*, 402 U.S. at 401.

Essentially, Miller asks the Court to re-weigh the evidence, which is not allowed. *Williams*, 970 F.2d at 1182 (the district court is not empowered "to weigh the evidence or substitute its conclusions for those of the fact-finder."); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). And the Court finds no support in the record for the argument that the ALJ cherry-picked the record, particularly given that the very facts Miller claimed the ALJ had failed to mention were expressly considered.

The ALJ's evaluation of Dr. Kneifati's opinion is supported by substantial evidence, and Miller has identified no error.

**B. Miller's Mental Limitations**

Miller next argues that the ALJ erred at step two by finding his depression and anxiety to be non-severe impairments and failed to properly consider them at the RFC stage. Doc. 16 at 17.

First, the ALJ's finding that Miller's anxiety and depression were not severe was supported by substantial evidence. Under Social Security regulations, medically determinable impairments that "have no more than a minimal effect on an individual's ability to work" are considered

non-severe. SSR 85-28. The ALJ reviewed records from multiple medical providers regarding Miller's anxiety and depression and considered the four broad functional areas for evaluating mental impairments known as the "paragraph B" criteria. Doc. 9-18 at 8-9. In each of these four areas, the ALJ found, after reviewing record evidence, that Miller has only mild limitation. *Id.* at 9. The Court will not re-weigh the evidence, nor substitute its own judgment for that of the ALJ. The Court finds that the ALJ's conclusion that the mental limitations were not severe was supported by substantial evidence and therefore was not error.

Second, Miller argues, in conclusory fashion, that "the ALJ may have considered the entire record and all of Mr. Miller's symptoms, but the ALJ did not clearly explain or demonstrate it in his evaluation of Mr. Miller's symptoms or the RFC analysis." Doc. 16 at 20. That is not accurate. In crafting the RFC, the ALJ discussed the assessments of two state agency medical consultants and found them persuasive. Doc. 9-18 at 14. Both doctors found that Miller's mental health impairments were not severe and caused at most mild limitations. *Id.* That explanation is consistent with the ALJ's thorough analysis of the "paragraph B" criteria at step two, and supported by substantial evidence.

As such, the ALJ did not err in evaluating Miller's mental health limitations.

## IV. CONCLUSION

Accordingly, the Commissioner's decision will be AFFIRMED.

An appropriate order follows.

Date: August 4, 2026

s/*Sean A. Camoni*
Sean A. Camoni
United States Magistrate Judge